**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| PACSEC3, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No. 6:20-CV-00914 |
| | ) |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| NETSCOUT SYTEMS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT NETSCOUT SYSTEMS, INC.'S OPPOSED MOTION TO TRANSFER
VENUE TO THE EASTERN DISTRICT OF MICHIGAN**

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

   A.  Legal Standard ........................................................................................................ 2

   B.  This Action Could Have Been Brought in the Eastern District of Michigan ............... 3

   C.  The Private Interest Factors Weigh Heavily in Favor of Transfer .............................. 3

      1.  The relative ease of access to sources of proof favors transfer ........................... 3

      2.  The availability of compulsory process to secure the attendance of witnesses is neutral 5

      3.  The cost of attendance for willing witnesses favors transfer .............................. 6

      4.  All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer ................................................................................. 8

   D.  The Public Interest Factors Favor Transfer ............................................................... 9

      1.  The administrative difficulties flowing from court congestion is neutral ........... 9

      2.  Interest in having localized interests decided at home favors transfer ............... 9

      3.  The remaining public interest factors are neutral ............................................. 10

III. Conclusion ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236 (E.D. Tex. Sept. 19, 2017 ............................................................................................................................................7

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 WL 4095547 (E.D. Tex. Aug. 2, 2016) ........................................................................................................9

*DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. Jun. 13, 2014)..............................................................................................................................................10

*DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-CV-919-JDL, 2014 WL 6847569 (E.D. Tex. Nov. 7, 2014).............................................................................................................................................9

*Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761 (E.D. Tex. 2009) ...................................................4

*In re Apple Inc.*, 979 F.3d 1332 (Fed. Cir. 2020) ........................................................................6, 9

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) ......................................................2, 4, 7, 10

*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009).................................................6, 10

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011).....................................................................6

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009)............................................................3, 9

*In re Toyota Motor Corp.*, 747 F.3d 1338 (Fed. Cir. 2014) ............................................................6

*In re TS Tech USA Corp.*, 551 F.3d 1315 (5th Cir. 2008)................................................................2

*In re Volkswagen AG,* 371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*")..............................2, 9, 11

*In re Volkswagen of Am., Inc.,* 545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ..................passim

*In re Volkswagen of Am., Inc.*, 566 F.3d 1349 (Fed. Cir. 2009) ("*Volkswagen III*") ......................2

*Innovative Global Sys.'s LLC v. Onstar, LLC*, No. 6:10-CV-574, 2012 WL 12930885 (E.D. Tex. Feb. 14, 2012)................................................................................................................................11

*Moskowitz Family LLC v. Globus Medical, Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710 (W.D. Tex. Jul. 2, 2020) ..................................................................................................................9

*Parus Holdings Inc. v. LG Electronics Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020)............................................................................................................2, 4, 7

*TC Heartland LLC v. Kraft Food Group Brands LLC,* 137 S.Ct. 1514 (2017) ...............................4

*Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. Jun. 6, 2018) ............................................................................................................................................................4

*Valeo, Inc. v. Federal-Mogul Corp.*, No. EP-13-CV-115-PRM, 2013 WL 8480673 (W.D. Tex. Oct. 17, 2013) ..................................................................................................................................6

Pursuant to 28 U.S.C. § 1404(a), Defendant NetScout Systems, Inc. ("NetScout") respectfully requests an order transferring this action to the United States District Court for the Eastern District of Michigan ("EDMI"), which is the clearly more convenient forum in view of the location of relevant witnesses, documents, and evidence. The undersigned confirms counsel for NetScout conferred in good faith with counsel for PacSec3, LLC ("PacSec") on December 29, 2020 in an attempt to resolve this matter by agreement as required by Local Rule CV-7(i), and certifies no agreement could be made for the reasons discussed herein.

## I.   INTRODUCTION

PacSec filed this lawsuit against NetScout alleging NetScout's Arbor product line ("Arbor Products") infringe one or more claims of the Asserted Patents.[1] The Eastern District of Michigan is a clearly more convenient forum to litigate PacSec's claims against the Arbor Products, which are designed and developed in Ann Arbor, Michigan by Arbor Networks, NetScout's security division. This has been true since Arbor Networks was founded in 2000 resulting from research at the University of Michigan in Ann Arbor. Ex. A, Declaration of Scott Dawson ("*Dawson Dec.*"), ¶4. NetScout's Ann Arbor facility houses the research, design, and development departments for the Arbor Products, including all identified material and relevant witnesses and all documentary or physical evidence, including source code and technical documentation, relating to design and development of the Arbor Products. In contrast, the Arbor Products have no identifiable connection to Texas apart from their national distribution. Even PacSec's connection to this District is minimal; nor do any third-party witnesses reside in Texas. NetScout therefore respectfully asks the Court to transfer this case to the EDMI.

---

[1] PacSec alleges that NetScout's Arbor Peakflow SP solution infringes U.S. Patent Nos. 6,789,190; 7,047,564; and 7,523,497 (collectively, the "Asserted Patents").

## II. ARGUMENT

### A. Legal Standard

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). The Fifth and Federal Circuits have set forth the standard to be used in deciding motions to transfer. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") (applying the Fifth Circuit's *en banc Volkswagen II* decision to rulings on transfer motions out of this Circuit); *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (*en banc*). The Fifth Circuit has held that transfer is appropriate when the transferee forum is "clearly more convenient" than the plaintiff's chosen venue. *Id*. "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (5th Cir. 2008) (citing *Volkswagen II*). Rather, the most important inquiry is the location of the evidence in the case including witnesses and documents. *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Parus Holdings Inc. v. LG Electronics Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *5 (W.D. Tex. Aug. 20, 2020) (Albright, J.) (stating the "convenience of witnesses is the single most important factor in the transfer analysis").

The threshold question is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If the transferee district is a proper venue, then the court must weigh the relative conveniences of parties and witnesses as well as the interests of the particular venues in hearing the case. *Id*. The Fifth Circuit considers several private and public interest factors, all of which are discussed below. *Id.*; *see also Volkswagen II,* 545 F.3d at 315 (quoting *Volkswagen I,* 371 F.3d at 203 and identifying public and private interest factors). *Id.* "[I]n a case featuring most witnesses and evidence closer

to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

      **B.**      **This Action Could Have Been Brought in the Eastern District of Michigan**

As a threshold issue, this case could have been brought in the EDMI. Venue is proper in the district where the defendant corporation resides or where the defendant has committed the alleged acts of infringement and maintains a regular and established place of business. 28 USC. §1400(b). PacSec's complaint alleges that NetScout infringes the Asserted Patents by "offer[ing] for sale, sell[ing] and manufactur[ing] one or more firewall systems, including the Arbor Peakflow SP solution[.]" Dkt. 1 (Complaint), ¶¶9, 16, 23. NetScout's Arbor Products are designed, developed, and tested by engineers based in or managed from the NetScout R&D facility in Ann Arbor, Michigan, within the EDMI. *Dawson Dec.*, ¶ 6. Thus, venue is proper in the EDMI. *See TC Heartland LLC v. Kraft Food Group Brands LLC,* 137 S.Ct. 1514, 1521 (2017).

      **C.**      **The Private Interest Factors Weigh Heavily in Favor of Transfer**

            **1.**      *The relative ease of access to sources of proof favors transfer*

"[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F.Supp.2d 761, 767 (E.D. Tex. 2009). This is particularly true in patent infringement cases, where the bulk of the relevant evidence usually comes from the accused infringer. *Genentech*, 566 F.3d at 1345 (finding "the place where the defendant's documents are kept weighs in favor of transfer to that location"). Although there have been advances in electronic data transfer technologies, this Court has "adhere[d] to the precedent of the Fifth Circuit when considering the location of relevant documents and information." *Parus Holdings Inc.*, 2020 WL 4905809 at *3 (citing to *Volkswagen*

3

*II*, which found the physical location of evidence still important in the electronic era); *see also Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *2 (W.D. Tex. Jun. 6, 2018) (noting "despite advances in technology and mandatory electronic filing, courts continue to analyze the distance documents must be transported from their physical location to the trial venue, acting under the assumption that electronically stored documents are, in fact, physical").

NetScout is headquartered in Westford, Massachusetts, which is over 1,200 miles closer to the EDMI than the WDTX. Arbor Networks, which is in charge of design and development of the Arbor Products, is located *within* Ann Arbor, Michigan, which is home to an EDMI courthouse. *Dawson Dec.*, ¶¶4-5; *see also* https://www.mied.uscourts.gov/ (listing Ann Arbor location). Accordingly, the vast majority of NetScout's physical and documentary evidence is located in that District. *Id.*, ¶11. To this day, the Arbor Products continue to be designed, developed, and tested by over 100 engineers at the Ann Arbor R&D facility. *Id.*, ¶6. Indeed, the core technical documents relating to the Arbor Products are located in Ann Arbor in either physical or electronic form. *Id.*, ¶11. The source code for the Arbor Products is developed, maintained, and archived in Ann Arbor. *Id.* Relevant emails or custodial documents regarding the design and development process for the Arbor Products are located there. *Id.* While NetScout's marketing and finance groups are stationed in Westford, where documents regarding the marketing and finances of the Arbor Products are located, these documents are also accessible from its Ann Arbor facility. *Id.*, ¶¶7-8, 11. Each of these sources of information will be highly relevant to the issues of infringement and damages in this case. While NetScout does have an office in Allen, Texas (which is in the Eastern District of Texas), no relevant documents are located in Texas because the Arbor Products were not designed or developed in Texas. *Id.*, ¶12. This factor strongly favors transfer. The location and nature of PacSec's evidence does not change the analysis.

4

According to the complaint, Plaintiff PacSec is a "Texas Limited Liability Company with its principal place of business located in Harris County, Texas," which is in the Southern District of Texas. Dkt. 1, ¶1. With no physical business address, PacSec's only connection to Texas appears to be a construct for litigation. To be sure, PacSec was formed on August 11, 2020, one week prior to its acquisition of the Asserted Patents on August 18, 2020, and less than two months before filing this lawsuit. Ex. B; Ex. C. The Federal Circuit cautions that where a plaintiff's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation[,]" courts should not be misled. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) ("the offices in *Zimmer* staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"). As such, PacSec's connection to Texas should be afforded no weight. *Id*. at 1364-65. Further, the only relevant documents PacSec likely possesses are the patent purchase and assignment agreement, and the file histories. Regardless, a "movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020). Because the greater magnitude of evidence is located nearer to or within the EDMI, this factor weighs heavily in favor of transfer. *Valeo, Inc. v. Federal-Mogul Corp.*, No. EP-13-CV-115-PRM, 2013 WL 8480673, at *3 (W.D. Tex. Oct. 17, 2013) (noting the "principal target of inquiry is the [location for the] design and construction of the accused product[s]").

    2.    *The availability of compulsory process to secure the attendance of witnesses is neutral*

For this factor, the Court evaluates whether the WDTX or the EDMI has subpoena power over non-party witnesses. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009). However, the "comparison between the transferor and transferee forums is not altered by

the presence of other witnesses and documents in places outside both forums." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). Here, NetScout is not aware of a single material and relevant non-party witness located in the WDTX or within 100-miles of Waco, Texas. Indeed, the inventor and prosecuting attorney for the Asserted Patents reside in California. Exs. E-G (listing Donald N. Cohen from Los Angeles, California, as the only named inventor); Ex. H (showing the Asserted Patents' prosecuting attorney, David Belasco, similarly resides in California). Accordingly, this factor is neutral.

        3.    *The cost of attendance for willing witnesses favors transfer*

The convenience of witnesses is the single most important factor in the transfer analysis. *Genentech, Inc.*, 566 F.3d at 1342. The Court should consider all potential material and relevant witnesses. *Parus Holdings Inc.*, 2020 WL 4905809 at *5 (Albright, J.) (citing *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017)). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Genentech, Inc.*, 566 F.3d at 1343; *Volkswagen II*, 545 F.3d at 317 (it is an "obvious conclusion that it is more convenient for witnesses to testify at home and that...additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment," family, and community).

All material and relevant employee witnesses with knowledge of the Arbor Products are located in Ann Arbor, Michigan, or Westford, Massachusetts, not in Texas. *Dawson Dec.*, ¶¶6-10. Ann Arbor is in the EDMI, while Westford is over 1,200 miles closer to the EDMI than this District. NetScout's current developers and engineers that work on the Arbor Products are located

in or near its R&D facility in Ann Arbor and the marketing and finance teams relating to the Arbor products are located in Westford. *Id*. These witnesses include at least Scott Dawson (Ann Arbor) who is knowledgeable regarding the design, development, operation, and has oversight responsibilities for all of the Arbor Products; Tom Bienkowski (Westford) who is knowledgeable regarding marketing of the Arbor Products; and, Tony Piazza (Westford) who is knowledgeable regarding financial information for the Arbor Products. *Id*., ¶¶9-10. These witnesses and their Michigan or Massachusetts based teams collectively have knowledge regarding the entire life cycle of the accused Arbor Products, from design and development to sale. Without a transfer, all NetScout witnesses will have to travel a minimum of about 1,300 miles to reach this District, pay for flight and hotel costs, and significantly disrupt their work schedules. *Id*., ¶¶13-15 (noting a direct flight from Boston to Detroit takes approximately 2 hours, whereas a flight from Boston to Waco requires at least one stop and approximately 6.5 hours). Indeed, for any witnesses residing in Westford, travel to Waco will require an additional 9 hours round trip as compared to Detroit. *Id*. And those witnesses can continue to work seamlessly from NetScout's Ann Arbor office, as often done in the normal course of business. *Id*. If transferred, none of NetScout's witnesses knowledgeable of the design and operation of the accused Arbor Products would have to fly or stay at a hotel at all. *Id*., ¶14.

No relevant NetScout witnesses are located in Texas (*id*., ¶12) and, thus, there are no witnesses in Texas that have any bearing on the transfer analysis. *See, e.g.*, *Hammers v, Mayea-Chang*, No. 2:19-CV-00181-JRG, 2019 WL 6728446, at *7 (E.D. Tex. Dec. 11, 2019) (citing *Volkswagen II*) (sources of proof "correlates to production and presentation to the jury at trial"). This factor strongly favors transfer. In addition, PacSec has shown it is not inconvenient to proceed with trial outside of this District because it has filed suit involving the Asserted Patents in the

District of Utah.[2] Ex. D. As described above, the named inventor and the prosecuting attorney of the Asserted Patents reside in California, not Texas. Travel from Los Angeles to Waco takes slightly more time than travel from Los Angeles to Detroit. Ex. I-J (showing flight times from L.A. to Waco and Detroit). Regardless, the magnitude of material and relevant witnesses located in or nearer to the Eastern District of Michigan should be afforded significant weight. *Moskowitz Family LLC v. Globus Medical, Inc.*, No. 6:19-cv-00672-ADA, 2020 WL 4577710, at *5 (W.D. Tex. Jul. 2, 2020) (Albright, J.) (refusing to look past the greater number of party witnesses who would be inconvenienced without transfer).

Because "most witnesses and evidence [are] closer to the transferee venue," this factor strongly weighs in favor of transfer. *In re Nintendo*, 589 F.3d at 1198 (applying Fifth Circuit law).

> 4. *All other practical problems that make trial of a case easy, expeditious, and inexpensive favor transfer*

The fourth private interest factor encompasses "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen I*, 371 F.3d at 203. This includes problems "that are rationally based on judicial economy." *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-CV-919-JDL, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 7, 2014). Prior to this year, the Asserted Patents had not been previously litigated in any court. As noted above, the only additional case involving the Asserted Patents is currently pending in the Western District of Washington. Like that case, this case is in its early stages and there are no practical problems deterring this Court from transferring this litigation. *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-cv-548-ALM, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016). Indeed, the Federal Circuit has instructed that "once a party files a transfer motion, disposition of that motion should take top

---

[2] *PacSec3, LLC v. F5 Networks*, 2:20-cv-00697 (D. Utah Oct. 2, 2020). This case has since been transferred. *See* Case No. 2:20-cv-1828 (W.D. Wash.).

priority in the case." *In re Apple*, 979 F.3d at 1343. This factor weighs in favor of transfer.

### D. The Public Interest Factors Favor Transfer

#### 1. *The administrative difficulties flowing from court congestion is neutral*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *Genentech,* 566 F.3d at 1347. However, the Federal Circuit has found this factor the "most speculative," where "case-disposition statistics may not always tell the whole story." *Id*.; *see also DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *4 (W.D. Tex. Jun. 13, 2014) (noting "bland statistics" such as average time to trial provides unclear guidance). While there is some difference in the median time to trial (31 months for EDMI v. 20 months for WDTX), the EDMI has approximately 2,500 fewer pending civil cases than the WDTX. Ex. K. Transfer would alleviate this District's congestion, but keeping the case here may result in a quicker disposition. Regardless, where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347. This factor is neutral.

#### 2. *Interest in having localized interests decided at home favors transfer*

This second public interest factor heavily favors transfer. It is widely understood that when there are significant connections between a venue and the events that gave rise to the suit, this factor should be weighed in favor of transfer to that venue. *Hoffmann-La Roche Inc.*, 587 F.3d at 1338. As such, there may be a strong local interest where "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *Id*. at 1336.

Here, the Eastern District of Michigan has a far greater interest than this District in resolving this dispute. The Arbor Products were the result of research that took place at the University of Michigan, which is in the Eastern District of Michigan. *Dawson Dec*., ¶4. In addition,

the research and development of the Arbor Products continues to this day there and documents and source code regarding these products are located there. *Id*, ¶¶4-5. All of NetScout's expected material and relevant witnesses–the individuals who originally developed and continue to work on the Arbor Products–are located in the Eastern District of Michigan. By contrast, this District does not appear to have any interest in this dispute where PacSec was only recently formed and associated with Texas. Where, as here, the accused products are available equally throughout the country, transfer is warranted to the venue with a more genuine stake in the controversy. *Volkswagen I*, 545 F.3d at 317-18 (finding the general availability of a product in the district did not create a localized interest sufficient to weigh against transfer). On the contrary, PacSec has no connection to this District. This factor favors transfer.

        3.    *The remaining public interest factors are neutral*

The third and fourth public interest factors, "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," are both neutral. *Volkswagen II*, 545 F.3d at 315. Both the Western District of Texas and the Eastern District of Michigan are equally capable of applying U.S. patent laws and there are no conflicts of law to avoid. *Innovative Global Sys.'s LLC v. Onstar, LLC*, No. 6:10-CV-574, 2012 WL 12930885, at *8 (E.D. Tex. Feb. 14, 2012) (noting both Eastern District of Michigan and Texas district courts are familiar with federal patent law).

**III.  CONCLUSION**

Based on the foregoing, NetScout respectfully requests the Court grant its motion to transfer this action to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a).

Dated:  December 30, 2020

Respectfully submitted,

*/s/ Mark C. Lang*
Eric A. Buresh (admitted *pro hac vice*)
Michelle L. Marriott
Mark C. Lang (admitted *pro hac vice*)
ERISE IP, P.A.
7015 College Blvd., Suite 700
Overland Park, Kansas 66211
Phone: (913) 777-5600
Facsimile: (913) 777-5601
Eric.Buresh@eriseip.com
Michelle.Marriott@eriseip.com
Mark.Lang@eriseip.com

***Attorneys for Defendant***
***NetScout Systems, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 30, 2020, a copy of the foregoing document was served upon all counsel of record who are deemed to have consented to electronic service.

*/s/ Mark C. Lang*
Mark C. Lang