IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **PACSEC3, LLC,** *Plaintiff,* | § § § | |
| *v.* | § § | 6:20-CV-00914-ADA |
| **NETSCOUT SYSTEMS, INC.,** *Defendant.* | § § § § | |

## ORDER DENYING MOTION TO TRANSFER VENUE

Before the Court is Defendant NetScout Systems, Inc.'s ("NetScout") Motion to Transfer Venue to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a) ("Motion to Transfer"). ECF No. 15. After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** NetScout's Motion to Transfer.

## I. BACKGROUND

Plaintiff PacSec3, LLC ("PacSec3") filed this lawsuit on October 2, 2020, alleging that NetScout's Arbor line of products infringe its U.S. Patent Nos. 6,789,190; 7,047,564; and 7,523,497 (the "Asserted Patents"). ECF No. 1 at ¶¶ 9, 16, 23. After filing an Answer to PacSec3's original Complaint, NetScout filed this Motion on December 30, 2020 to transfer venue under 28 U.S.C. § 1404(a), requesting that this case be transferred from the Western District of Texas ("WDTX") to the Eastern District of Michigan ("EDMI"). ECF No. 15. Subsequently, PacSec3 has filed three more cases in this Court involving the same three Asserted Patents: *PacSec3, LLC v. Juniper Networks, Inc.*, No. 6:21-cv-00387, filed on April 21, 2021; *PacSec3, LLC v. Cisco Systems, Inc.*, No. 6:21-cv-00388-ADA, also filed on April 21, 2021; and *PacSec3, LLC v. Watchguard Technologies, Inc.*, No. 6:21-cv-00633-ADA, filed June 18, 2021.

1

PacSec3 is a limited liability company formed under Texas law and has its principal place of business in Harris County, Texas. ECF No. 1 at ¶ 1. NetScout is a Massachusetts corporation headquartered in Westford, Massachusetts. ECF No. 15 at 4. NetScout's security division, Arbor Networks, is located in Ann Arbor, Michigan, within the EDMI. *Id*. at 1. NetScout also maintains a facility in Allen, Texas, which is in the Eastern District of Texas. *Id*. at 4.

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The preliminary question under [Section] 1404(a) is whether a civil action 'might have been brought' in the [transfer] destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems

that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id* at 203. The weight the Court gives to each of these assorted convenience factors will necessarily vary from case to case. *Burbank International, Ltd. v. Glf Consol. International, Inc.*, 441 F. Supp. 819, 821 (N.D. Tex. 1977).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden that a movant must carry is not that the alternative venue is more convenient, but that it is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 314 n.10. While "clearly more convenient" is not explicitly equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. ANALYSIS

The threshold determination under the Section 1404 analysis is whether this case could initially have been brought in the destination venue—the Eastern District of Michigan. Neither party contests the fact that venue is proper in the EDMI and that this case could have been brought there. Thus, the Court will proceed with its analysis of the private and public interest factors.

**A. The Private Interest Factors**

*i. The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Although the physical location of electronic documents does affect the outcome of this factor under current Fifth Circuit precedent (*see Volkswagen II*, 545 F.3d at 316), this Court has stressed that the focus on physical location of electronic documents is out of touch with modern patent litigation. *Fintiv*, 2019 WL 4743678, at *8; *Uniloc 2017 LLC v. Apple Inc.,* 6-19-CV-00532-ADA, 2020 WL 3415880, at *9 (W.D. Tex. June 22, 2020) ("[A]ll (or nearly all) produced documents exist as electronic documents on a party's server. Then, with a click of a mouse or a few keystrokes, the party [can] produce[] these documents" and make them available at almost any location). Other courts in the Fifth Circuit similarly found that access to documents that are available electronically provides little benefit in determining whether a particular venue is more convenient than another. *See Uniloc USA Inc. v. Samsung Elecs. Am.*, No. 2:16-cv-642-JRG, 2017 U.S. Dist. LEXIS 229560, at *17 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore this reality

4

in favor of a fictional analysis that has more to do with early Xerox machines than modern server forms.").

NetScout asserts that the "vast majority of [its] physical and documentary evidence" and the "core technical documents relating to the Arbor Products" are located in Ann Arbor, Michigan "in either physical or electronic form." ECF No. 15 at 4. However, NetScout does not specifically identify what documents are in physical form and what documents are in electronic form, and if the documents are in physical form, why they cannot be made available electronically. In the reality of the modern world, where almost all documents are stored electronically, especially for technology companies like NetScout, a vague and conclusory assertion that the documents are "in either physical or electronic form" should not be given much weight. *See Rockstar Consortium US LP v. Google Inc.*, No. 2:13-CV-893-JRG-RSP, 2014 WL 4748692, at *3–5 (E.D. Tex. Sept. 23, 2014) (weight of the evidence presented by Google for this factor did not meet its burden where Google provided "neither evidence of where its documents are actually located nor evidence that these documents are more available or accessible from the Northern District of California than they would be from [] Texas"). Indeed, NetScout states that while its "documents regarding the marketing and finances of the Arbor Products are located [in Westford, Massachusetts], these documents are also accessible from its Ann Arbor facility." ECF No. 15 at 4. This appears to be a tacit acknowledgment that NetScout's documents are stored in electronic form and are therefore accessible from any location, either in the EDMI or in the WDTX. NetScout further states that the source code for the Arbor Products is developed, maintained, and archived in Ann Arbor, and the "[r]elevant emails and custodial documents" are also located there. *Id.* However, as PacSec3 points out, these documents should be equally accessible at NetScout's Allen, Texas facility. ECF No. 36 at 3.

PacSec3 alleges that all of its documents concerning the asserted patents and its business operations are located in or accessible from its principal place of business located in Houston, Texas. ECF No. 36 at 5. Similar to NetScout's assertions, PacSec3 does not specifically point out whether those documents are in physical or electronic form, and if in physical form, why they cannot be made available electronically. Further, since the bulk of the relevant evidence usually comes from the accused infringer in patent infringement cases, the location of the plaintiff's documents should be given little weight. *See In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d at 1345).

In view of the above, the Court finds that this factor is neutral. To be clear, this is not to say that the physical location of these documents is irrelevant to the Court's analysis of this factor. In evaluating the "relative ease of access" to the evidence, the Court cannot rightly say that the EDMI would have significantly easier access to NetScout's relevant documents than the WDTX would have. *See Volkswagen I*, 371 F.3d at 203. This is especially true for NetScout's documents regarding marketing and finances, which are located in Massachusetts.

### *ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under this factor, the Court particularly considers non-party witnesses whose attendance may need to be secured by a court order. *Fintiv*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316); *Uniloc*, 2020 WL 3415880, at *10. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014). A federal court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to

attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Because party witnesses almost invariably attend trial willingly, "[w]hen no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-cv-00513 (W.D. Tex. Mar. 17, 2020) (citation omitted).

NetScout contends that this factor is neutral because the only relevant potential non-party witnesses, the inventor and prosecuting attorney for the asserted patents, reside in California. ECF No. 15 at 6. On the other hand, PacSec3 argues that there are a number of NetScout's customers are located in Texas, such as NTT Data, Inc., Verizon Business, and Bank of America. ECF No. 36 at 6. However, as NetScout points out, PacSec3 has not established that any specific employees of these companies would be trial witnesses. ECF No. 37 at 3. Further, PacSec3 only states that it intends to subpoena these companies, but discovery subpoenas can be issued from any court where the third party resides. Therefore, the Court finds this factor is neutral.

### *iii. The Cost of Attendance for Willing Witnesses*

"The convenience of witnesses is the single most important factor in the transfer analysis." *Fintiv*, 2019 WL 4743678, at *6. "The Court gives the convenience of party witnesses little weight." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *5 (W.D. Tex. Aug. 20, 2020). The Court does not assume that all of the party witnesses listed in Section 1404(a) briefing will testify at trial. *Fintiv*, 2019 WL 4743678, at *6. "Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses . . . will testify live at trial. Therefore, long lists of potential party . . . witnesses do not affect the Court's analysis for this factor." *Id.*

NetScout contends that its current developers and engineers that work on the Arbor Products are located in Ann Arbor, Michigan and the related marketing and finance teams are located in Westford, Massachusetts, and listed one potential party witness located in Ann Arbor and two potential party witnesses located in Westford. ECF No. 15 at 7. PacSec3 argues that its key party witness is located in Houston, Texas. ECF No. 36 at 7. However, speculative lists of potential witnesses are not afforded as much weight under this factor as witnesses who will actually testify at trial, especially when those potential witnesses are party witnesses. *See Fintiv*, 2019 WL 4743678, at *6; *Parus Holdings*, 2020 WL 4905809, at *5.

The parties have only identified three willing non-party witnesses, all of whom live in Los Angeles, California: Donald Cohen, the inventor of the asserted patents; David Belasco, the prosecuting attorney of the asserted patents; and Dr. Krishnamurthy Narayanaswamy, PacSec3's claim construction expert. ECF No. 36 at 7-8; ECF No. 37 at 4. PacSec3 contends that this District is more convenient than the EDMI because the travel time from LAX to the federal courthouse in Waco is 4 hours and 30 minutes, while the travel time from LAX to the federal courthouse in Ann Arbor is 4 hours and 38 minutes. ECF No. 36 at 7. The Court is not persuaded that an eight-minute difference in travel time makes a significant impact on the convenience of the witnesses' travel. Therefore, the Court finds that this factor is also neutral.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex.

Mar. 21, 2013). The interests of justice may be best served by transferring ancillary matters pending in other forums to the forum of the main action, particularly if the main action is complex. *Bank of Texas v. Computer Statistics, Inc.*, 60 F.R.D. 43, 45 (S. D. Tex. 1973).

PacSec3 states that this factor is neutral, but argues under the "avoidance of conflicts of law" factor that there are several other cases pending in this Court that involve the same asserted patents. ECF No. 36 at 9-10. The Court notes that related pending cases should be analyzed under the "all other practical problems" factor instead, and properly does so. As stated above, there are three more related cases pending in this Court involving the same three Asserted Patents: *PacSec3, LLC v. Juniper Networks, Inc*., No. 6:21-cv-00387; *PacSec3, LLC v. Cisco Systems, Inc*., No. 6:21-cv-00388-ADA; and *PacSec3, LLC v. Watchguard Technologies, Inc*., No. 6:21-cv-00633-ADA. Since the same three patents are asserted in these cases, they involve overlapping issues, such as claim construction, invalidity, prior art, conception, and reduction to practice. This Court has recognized that "judicial economy favors having the infringement of the same patent considered by one judge." *SynKloud*, 2020 WL 2494574, at *5. Because parallel litigations concerning the same patents at issue are pending in this District, the Court finds that this factor strongly weighs against transfer.

## B. The Public Interest Factors

### i. Administrative Difficulties Flowing from Court Congestion

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved." *Genentech*, 566 F.3d at 1347. A faster average time to trial means more efficient and economical resolutions of the claims at issue.

NetScout acknowledges that the median time to trial is 31 months for the EDMI versus 20 months for the WDTX, but argues that "the EDMI has approximately 2,500 fewer pending

civil cases than the WDTX." ECF No. 15 at 9. However, as much as NetScout wants to downplay that difference in the median time to trial between the two districts, it cannot deny that an 11-month difference is very significant, particularly in the context of patent litigation involving alleged ongoing infringement throughout the country. Further, despite the large number of cases pending before this Court, the Court has been able to bring patent cases to trial much faster than the EDMI even in the Court's very recent patent jury trials in 2021. *See, e.g., CloudofChange, LLC v. NCR Corporation*, No. 6-19-cv-00513 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-cv-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-cv-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-cv-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial).

Since this case will likely be resolved much quicker in the WDTX than in the EDMI, the Court finds that this factor strongly weighs against transfer.

### *ii. Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015).

NetScout points out that the accused Arbor Products result from research that took place at the University of Michigan, which is located in the EDMI, and the research and development of the Arbor Products continues there. ECF No. 15 at 9. On the other hand, PacSec3 was only recently formed and associated with Texas, just months before this lawsuit was filed. *Id*. at 5 and

10. In response, PacSec3 does not point to any particular connection to this District, other than generally asserting that "the enforcement of IP rights is important to [this] District" since it is home to the "Silicon Hills." ECF No. 36 at 9. Since neither party has any particular connections to this District, the Court finds that this factor weighs in favor of transfer.

### *iii. The "Familiarity of the Law" and "Avoidance of Conflicts of Law" Factors*

The parties agree that "both forums can adequately handle the case and apply the law." ECF No. 36 at 10; ECF No. 37 at 5. The Court notes that this case involves federal patent law and there is no risk of conflicts of law. Thus, these two factors are neutral.

## IV. CONCLUSION

Having considered the Section 1404(a) factors, the Court finds that NetScout has not met its significant burden to demonstrate that the EDMI is "clearly more convenient" than this District. Therefore, the Court **DENIES** NetScout's Motion to Transfer.

SIGNED this 27th day of July, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE